Good morning. May it please the Court. Kara Hartzler on behalf of Mr. Olivas. The question in this case is whether the BIA can retroactively apply its decision in matter of layal to hold that Mr. Olivas' conviction for Arizona endangerment is now a categorical crime involving moral turpitude. And the answer is no, for two reasons. First of all, the five-factor Montgomery Ward test leans heavily in Mr. Olivas' favor. But even if the Court disagrees with us, that would necessarily mean that res judicata applies, and that would bar the application of matter layal. So either way, we believe that we should prevail on our petition. So I'll start with the Montgomery Ward test. Under the five factors, I think the only issue that is seriously disputed by the parties is the second factor, and that's the question of whether this was the decision in matter of layal was an abrupt departure from well-established practice. Do we get into this unless there is a change of law? We do, Your Honor. And I think, first of all How? If there is no change in the law, how do we get into retroactivity? Well, I think that, first of all, the question of whether there is a change in law is factor two, and so it's sort of subsumed within the test itself. So I think the Court should err on the side, certainly, of applying the test and then looking at that as the second factor in the test. Why? Why do you say we should do that? Usually we take the easiest way to find a case and not decide issues we don't have to decide. It seems to me you just go right to the meat of it if you decide whether there's been a change of law. Well, Your Honor, I think if the Court did that as a separate inquiry at the beginning, then that would render the second factor superfluous. Okay. You don't even have to get to the rule then. Okay. So what is it? Why do you conclude that there's been a change of law? It seemed to me that it's a pretty strong case that there wasn't. Your Honor, I would disagree. And the reason that I disagree is this. That when you have an offense that has a mens rea of recklessness, you have to combine that with an aggravating factor of, for instance, serious bodily injury or death. Were those published BIA cases?  Published or unpublished? Published. So I agree with Your Honor that it was published BIA case law that said what I just said, that there has to be an aggravating factor of death or serious bodily injury. There were unpublished cases applying that specifically to Arizona endangerment. But we don't believe that that means the law was unsettled. We actually think the opposite, that because the law was so clear, it wasn't necessary for the BIA to actually do a published decision on Arizona endangerment, because the law already said under controlling BIA precedent that you have to have that aggravating factor. And Arizona endangerment did not have that aggravating factor. And that's why in, for instance, every single unpublished decision that was in effect at the time of Mr. Olivas' case, including the BIA's decision in his own case, they applied, the BIA applied that precedent decisions, those precedent decisions that I just mentioned, and said Arizona endangerment is not a crime involving moral turpitude. How do you define whether they're published or precedential by the BIA? Usually, Your Honor, it's in the citation. We can tell. The BIA puts it on their virtual law library, and it usually says the 27 INN decision. The unpublished decisions usually just have a Westlaw number on it. So you don't feel they or we are required to follow those? That you are not required to follow the precedential decisions? The unpublished. The unpublished. I think the BIA's unpublished decisions are a clear indication of what the BIA believed the law was at the time that Mr. Olivas pleaded guilty. I don't think you answered my question. I'm sorry. I apologize. Is the BIA bound by its prior unpublished decisions? It is not bound by its prior unpublished decisions. Okay. But it is, we believe it is bound by its precedential decisions. And, Your Honor, I think on the issue of whether the law was settled or not, all we need to do is look at the fact that the first time around, when Mr. Olivas was before the BIA, the BIA said that Arizona endangerment was not categorically a CIMT. Published opinion? No, that was in Mr. Olivas' own case, not published. Right. Was there a published BIA decision addressing the Arizona statute? There was not. There was not. There was not. But what happened was in the BIA's first unpublished decision, the BIA said this is not categorically a crime involving moral turpitude, and so we apply the modified categorical approach. The second time Mr. Olivas went to the BIA, they held, again, an unpublished decision that we don't apply the modified categorical approach. And so I don't see how we get from the BIA saying that the modified categorical approach applies to the modified categorical approach doesn't apply. But, counsel, what I'm trying to get to is if those cases were unpublished, then why doesn't that, at least for purposes of the Arizona statute, mean that there is no settled law on the point? Because, Your Honor, it would be the same as if, for instance, this Court said, all right, we say that State X's burglary statute is not a crime involving moral turpitude. And then State Y's burglary statute had the exact same elements. You wouldn't need a separate published decision from this Court. You might, because it depends on how the States themselves have defined the statute. So I don't know if that's the best example for you to use, because we grapple with that all the time with burglary statutes from different States, and depending on how those States have defined the burglary statutes, the jury instructions, the cases, the prosecutions, we may come to two different decisions based on statutes that read pretty much the same. And I totally agree with Your Honor. My hypothetical is presuming that State X and State Y have the exact same elements, that they do define the elements exactly the same. If two States do define the elements exactly the same, I don't think it would be necessary for this Court to have a published decision for State X and a published decision for State Y. And essentially, that's what was going on here. Everyone agreed at the time that Mr. Olivas-Mota pleaded that if you have a mens rea of recklessness, you have to have an aggravating factor of actual serious bodily injury or death. Arizona endangerment did not have that aggravating factor. And that's all that we needed to say that the law was clear, was settled, and that there was a change. Yes, Your Honor. Roberts. Can I ask you about the Third Circuit decision? Absolutely. I think it's 2004. So was the BIA decision in that case, the underlying BIA decision, was it unpublished there as well? When you say the Third Circuit case, could you say which one that is? It's K-N-A-P-I-K. I don't know how to pronounce it. Oh, NAPIC. That's why I was saying the Third Circuit case. Good question. So Your Honor's question is whether that was the underlying BIA decision there, was that to which the Third Circuit granted Chevron deference. Was that published or unpublished? The Third Circuit decision, I believe, was published, Your Honor. It wasn't controlling in the Ninth. I mean, and that's where we were at. But the BIA decision is recognized, right? That's right. So what I was trying to get at, if that decision was published, you were stressing that there were no published decisions involving the Arizona endangerment statute. That's correct. But it sounds like there were published BIA decisions involving endangerment statutes of other states that actually are quite similar to Arizona's, right? I apologize if I answered incorrectly, Your Honor. I believe that in the Third Circuit, the Third Circuit's decision was published. I don't believe that the Third Circuit's decision was based on a published BIA decision. That's what I was asking. Yes. Okay. Well, put aside that. Okay. Were there other published BIA decisions not involving Arizona's endangerment statute, but involving other states' endangerment? On endangerment or something with the similar elements, no. Okay. There were not. I see. Even if the Court disagrees with me on that, then I think we move into the question of would res judicata apply. And the answer is yes. So if you disagree with me on whether there was a change in law, I think we could still look at that. And the question with res judicata is, are the issues identical? Were the parties identical? And was there a final judgment on the merits? Now, here, the only, again, there's only one factor that the parties dispute, and that's whether there was a final judgment on the merits. And there was not. And we know that from the plain language of the statute, which says that when you have an agency decision that's a final order, that is a final order. And we also know that from the Supreme Court's decision in Utah. And there the Supreme Court set forth a test for when an agency decision has a preclusive effect, when it triggers res judicata. Counsel, was the res judicata issue exhausted before the BIA? Your Honor, we didn't specifically say it, but I don't think that that matters. And it doesn't matter for two reasons. First of all, it hadn't happened yet. In other words, the BIA hadn't yet applied the matter of leal, and so you can't really say that it violated res judicata when we didn't know if they were going to apply it or not. The only way that we could exhaust is once they had applied it, and at that point all we could have done was a motion to reopen. But this Court has said that a motion to reopen or reconsider is not required to do an exhaustion of administrative remedies. And then the other reason, Your Honor, is because essentially we did — we weren't given an opportunity to brief anything on remand. We did submit something and just said we don't think that leal should apply retroactively. But not on — but you didn't mention res judicata. We did not mention res judicata. That's correct. But we still think that basically we put the agency on notice. You should not be applying leal, and we think that that was sufficient. So moving on to res judicata, the only issue is whether there is a final order. And here both the plain language of the statute at 11A47B says that there is a final order, and also the Supreme Court's test in Utah. And so if the Court disagrees with us that this didn't merit a change in law, then that necessarily means that res judicata applies. And — So is it your view that the case was final? Yes. Under the Supreme Court's decision in Utah, you don't need judicial review. A case is final for purposes of res judicata if the agency has made a final decision. And, Your Honors, I'll save a little bit of my time, but I do just want to mention that we did raise the issue of whether the term crime involving moral turpitude is void for vagueness. I did point out in our 28J that the — there is a decision from this Court in that there has been a petition for rehearing on Bonk filed in that case, and so I don't think there's a final decision on that yet, and the mandate hasn't issued. But also, as we pointed out in our 28J, I think there's some serious questions here about — that are not necessarily foreclosed by Martinez v. Ryan, specifically that this Court — there's an emerging consensus that even if a statute itself is not void for vagueness, that an agency interpretation can render it void for vagueness, and that under the doctrine of constitutional avoidance, you don't necessarily have to strike down the statute in order to invoke void for vagueness. And so I won't go into that unless the Court has further questions, but I'm happy to talk about it. I have a question about res judicata. So at the point that the case was remanded to the BIA, what was the final judgment in your view? The final judgment was that the — the BIA held that Arizona endangerment was categorically a crime involving moral turpitude, and it ordered Mr. Olivas removed. Even though it was remanded for further consideration, in your view, the judgment was still final? The judgment of the BIA on the second time? Yes. Yes. Because it was an agency decision, and it was final under the plain language of the statute and the Supreme Court's decision in Utah. All right. Thank you, Counsel. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court, Sarah Bird on behalf of the Respondent, the Attorney General. This Court should deny the petition for review because the Board correctly determined that felony endangerment in violation of Arizona law is categorically a crime involving moral turpitude. This case is controlled by this Court's precedent decision in Lee-Alvey Holder. And in that case, the Court held that Arizona felony endangerment is categorically a crime involving moral turpitude, and the Court did not say that its decision would apply only prospectively. So under the default principles of retroactivity, a judicial decision just applies to all cases currently pending, including this one. If the Court had wanted it to not apply retroactively, the Court would have said in its opinion that it only applied prospectively. So with regard to our response to the retroactive challenge here, we have kind of three layers. The first layer, and you don't necessarily have to reach all three, the first layer is just that the Court's judicial opinion in Lee-Al controls and applies to all currently pending cases. Then the second layer, if you decide that for some reason Lee-Alvey Holder does not control, the second layer would be that matter of Lee-Al, the Board's precedent decision doesn't trigger the retroactivity issue because it's not a change in law for purposes of retroactivity. Certainly, every new precedent decision is an intervening development in the law. But in order for retroactivity issue to be triggered, it has to be a change from a prior precedent or well-established rule to a new rule, because retroactivity at its essence is a choice-of-law issue. Well, the — I guess I'm a little skeptical of that — that position. But the clear change in law certainly occurred in — was it — I'm trying to find the year — was it in 2008 with the Attorney General's — Silva-Trevino was 2008. Right. So that clearly was a change in the law, and that is what allowed Lee-Al to come out the way that it did, right? No, I disagree, actually, Your Honor. I think Silva-Trevino was a change with regard to the third step and the ability to go beyond the, you know, Taylor-Shepard documents. But as far as whether or not recklessness was — That's not the aspect of the decision I'm talking about. Okay. What aspect, Your Honor? It shifted the way that you would analyze a recklessness crime, didn't it? It changed the standard by which that would be judged going forward? It basically incorporated prior cases and explained and clarified. But I would say if there was a change in law, it was in 1976 with the matter of Medina. No. That's irrelevant for our purposes. Okay. So how do you explain, then, that we had these unpublished BIA decisions coming out in the petitioner's favor circa 2006? There were two unpublished cases that said that it was not categorically. Those were legally erroneous, is how I would explain it. They were actually trying to interpret precedent decisions, but came to a wrong conclusion on them. And Matt, you know — Well, the standard at that time was just as your opponent described it. If you had a recklessness crime, you needed some aggravating factor, which was on the order of, you know, injury or that kind of thing. And that's not what the Arizona statute requires. I don't think — I think that was one interpretation of the statute, but it proved to be of the standard at that time. I don't think that actually was the standard at the time under the precedent board decisions. For example, matter of Medina was a reckless mens rea. It was the first time the board held that recklessness was a sufficiently culpable mens rea. And there was no bodily injury or death or mention of the requirement for an aggravating factor. Instead, that was assault with a deadly weapon. But there was no use of the deadly weapon. It just was present. So the contention that bodily injury is required simply doesn't hold up to the precedent. Roberts, not that particular thing, but an aggravating factor of some sort, pretty narrowly defined, either like a protected class of victims or some kind of serious injury. So it's not — it wasn't just one type of aggravating factor, but there needed to be something more, and that the Arizona statute lacks that something more, at least as the law was defined then. At that time, some cases mentioned an aggravating factor, including, say, the Third Circuit, which said that, again, the aggravating factor was for assault. And because even if the mens rea is sufficiently culpable recklessness, there has to be — it has to be viewed in concert with the reprehensible conduct. So the aggravating factor goes to the reprehensible conduct. And in that 2004 published Third Circuit decision, the Third Circuit said that creating a grave risk of death was sufficient, and that was based on unpublished board decision. You asked that earlier. The underlying board decision was unpublished. And if you survey the law at that time, at the time of 2007 when Petitioner pled guilty, there were unpublished board decisions on reckless endangerment, various State statutes going different ways. Well, let me put it in these terms, because I guess I'm not persuaded by your position at this point. At the time that the Petitioner here pleaded guilty, there was at least a chance that his crime might be classified as not involving moral turpitude, right? Right. I think that it was an unsettled area of the law and there was a chance. Right. After Matter of Liao, there is no chance. We know for sure that it does qualify. It's now settled. Right.  So I don't see how that's any different from what's the case that I'm thinking of from our circuit. Is it Miguel? Miguel? Is that the name of the? Yeah. It seems to me that the change in the law here is very similar to the change in the law there, right? Because there, too, it wasn't like it was a guaranteed win for the Petitioner under the old law. And after the change in the law, it wasn't even like it was a guaranteed loss, but it was a much greater likelihood that he would lose. And we, nonetheless, said that, yeah, that that certainly qualified as a change in the law. And, in fact, he prevailed under the Montgomery Ward analysis. Well, here, I don't think it qualifies as a change in law. Garfias Rodriguez on Bonk, this Court said that it has to be something that overturns precedent or otherwise changes a settled expectation. And here, as we just mentioned. But we just went through it. And you agree that it absolutely did change it, because under the prior law, he had a chance, and you agree that after, matter of the law, he had no chance. So how is that not a change in the law? I think that that, in terms of the plain language of the meaning of change, certainly every intervening decision, every new precedent decision clarifies and settles something that was previously not settled. So, yes, under plain language, it is a change. And so, you know, we would say that it's not a change. Roberts, he relied on the state of the law then. I think, in fact, your opponent might have been the lawyer who advised him. She looked around and said, oh, there are actually specific BIA decisions, albeit unpublished, that deal with the exact same statute. And they say this does not qualify as a crime involving moral turpitude. So that's the state of the law when he pleads guilty. After a matter of leal, the whole world is turned upside down. And we know for sure that it now does qualify. So I just don't see how you can stand there and say there was no change in the law, that everything has just remained exactly the same from 2007 until the present. I'm not trying to say that it's remained exactly the same. I'm saying that the type of change in law that triggers a retroactivity analysis is one that overturns precedent. You're right. He relied perhaps on a chance, a hope, that if there was a precedent decision, it would come out in his favor. And, you know, facing criminal charges when deciding how to plea, if there's no precedent, you just have to the defense counsel has to say there's no precedent, but you can hope that it will come out in your favor. But in this case, even if you go to the third layer of our argument and say, okay, it was sufficient change in law, then when you look at Factor II and Factor III, they weigh heavily in favor of retroactive application. Of Montgomery Ward. That's what you're saying. Right. Of Montgomery Ward. And those are the two factors that are most salient, because the extent to which a new rule departs from a well-established practice, BIA precedent by regulation or, I mean, BIA non-precedential decisions simply cannot establish a well-established practice. And as I mentioned, the state of the law at that time in unpublished decisions went multiple ways. Okay. So I hear what you're saying, but let me go back to Silva-Trevino. Okay. That's just to help me with that. That's like a pronouncement from the Attorney General? Right. Okay. So what was the – there was some change in the way recklessness offenses are analyzed for purposes of your decision? I disagree. Silva-Trevino actually cites in a footnote the reckless cases dating all the way back to 1976, and is reiterating the standard that – and reiterating it, trying to make it more clear, but not specifically to recklessness, but to any mens rea, that in order to be a crime involving moral turpitude, it has to have a culpable mens rea. And he said – the Attorney General said that recklessness was one of those culpable mens rea and then reprehensible conduct. Can I ask – I'm just looking at my notes, trying to refresh myself. So tell me if I've gotten this wrong. I thought that prior to Silva-Trevino, the standard was, as your opponent described, you needed the recklessness mens rea plus some aggravating circumstance. What the Attorney General changed in Silva-Trevino was to say recklessness plus reprehensible conduct. Forget about aggravating circumstance. Reprehensible conduct alone would be sufficient. And that that was a deliberate and intentional change on the Attorney General's part to broaden the scope of offenses that could qualify as crimes involving moral turpitude. Is that – am I incorrect on that? Well, I don't think that's correct. Silva-Trevino, I don't think it uses – it discusses a requirement for an aggravating factor and then overturns that requirement. I think it merely says recklessness, as has long been established. Wait, wait. Just stop right there. Didn't you just agree with my – the whole premise of my question, that it did change the law? The prior standard required an aggravating circumstance, and you said just a second ago that it overruled that and said that no. No, I said I don't think it did. It did not. That's exactly what I was trying to say, is that I don't even think Silva-Trevino discussed any aggravating factor or requirement there. I think that Silva-Trevino – and to the extent that the aggravating factor is an issue, I think that goes to, again, Silva-Trevino making more clear that there's mens rea and then the reprehensible conduct. And as I've said, the cases after Silva-Trevino that have talked about aggravating factor, it comes up most often in the context of simple assault in a protected class. That goes to the reprehensible conduct. And this Court in Leal v. Holder discussed that and found that that was really – if you followed the line of cases, anything about aggravating factor went into whether or not simple assault, which normally the conduct is just a mere touching, which is not sufficient, could, regardless of the mental state, could have an aggravating factor sufficient to make it reprehensible conduct. So Silva-Trevino in 2008 did explain that there was the mens rea and then the reprehensible conduct, but with regard to the recklessness mens rea, it didn't overturn or specifically change the law in that regard. It changed the law in terms of the third step, which this Court subsequently overturned, but as I recall, Silva-Trevino in 2008 specifically just reiterated the state of the law as it already was with regard to recklessness being a sufficient mens rea in some cases, not per se. But no mens rea is per se a crime involving moral turpitude. It is always the mens rea in concert with the conduct, because the conduct – you can't have a mens rea to intend something without looking to see what it was that was intended or what risk with recklessness was created. And here, at the time of the decision – or at the time of his decision to plead guilty, there was only one published decision that I'm aware of from any court on reckless endangerment, and that was the decision holding that a grave risk of death was sufficient aggravating factor. Roberts, that was the Third Circuit. Roberts, yeah, not published BIA. Right. I'm not aware of any published BIA decision, and I'm only aware of one published circuit court decision. Roberts, right. So as to res judicata, we would say that it's not exhausted and also that it does not apply, because this is not a separate proceeding. Res judicata applies when there's a separate proceeding. But here, this was all part of the same proceeding. It went up. It came back down. That would be controlled by this Court's decision in Valendez-Alvarez. All right. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honor. I'd like to go back to Judge Watford, your line of questioning on Silva-Trevino, because I think it really hits the nail on the head. What happened was that when Mr. Olivas pleaded guilty in 2007, basically the only case law that was — I think our best case that I would point the Court to is Matter Fulau, and that's 21 INN Decision 475. That said that if you have an offense with a mens rea of recklessness and you don't have one of those aggravating factors, it is not a CIMT. Is that a published decision? That is a published decision, Your Honor. Which? Of the BIA. Of the BIA. And then what happened is the year later, the year after, in Silva-Trevino, the Attorney General changed the definition of a CIMT. He said for the first time, if you have — you can have a CIMT that has a mens rea of recklessness, but it then only has to be reprehensible conduct. And so the change in law came because there's a gap between what is reprehensible conduct and what the BIA had defined to be an aggravating factor. In other words — So was this before or after your client pleaded guilty? This was after my client pleaded guilty. In other words, my client pleaded guilty. At the time, you had to have an aggravating factor. Then the year after, the Attorney General said to be a CIMT, you have to have reprehensible conduct, which is lower than an aggravating factor. And that's really the heart of what we're saying here, is that that was the change in law. And then Matter of Layal applied that change in law, that change in the definition of a CIMT, to Arizona endangerment. Did Matter of Layal cite to the Attorney General opinion? Yes, it did. It relied on Silva-Trevino and Silva-Trevino's definition of recklessness plus reprehensible conduct. And because of that, that's precisely where we think this change in law happened. I think the other thing I would just point this Court to very quickly is in 2001, in a BIA decision called Torres-Varela, there's a concurring decision or concurring opinion by Lori Rosenberg, who was a BIA board member at that time, and she does a really long discussion of why recklessness required that aggravating factor. So I would encourage the Court to look to that to also see what the BIA considered the case law to be at that time. All right. Thank you, Counsel. Thank you, Your Honor. Thank you to both counsel for your arguments, your helpful arguments in this case. The case just argued is submitted for decision by the Court. The next three cases on calendar, Ramirez v. Sessions, Gennady v. UNLV, and Marquez v. Select Portfolio Servicing, have been submitted on the briefs. The next case on calendar for argument is Matthew Enterprise v. FCAUS.
judges: Wallace, Rawlinson, Watford